**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| **DENISE M. JEROME,** )<br>)<br>    **Plaintiff,** )<br>    v. )<br>) <br>**WATER SPORTS ADVENTURE  RENTALS** )<br>**AND EQUIPMENT, INC., d/b/a/ ISLAND** )<br>**FLIGHT ADVENTURES,** )<br>)<br>    **Defendant.** )<br>_____ ) | Civil Action No. 2009-092 |

**Attorneys:**
**A. Jeffrey Weiss, Esq.,**
St. Thomas, U.S.V.I.
    *For the Plaintiff*

**Robert L. King, Esq.,**
St. Thomas, U.S.V.I.
    *For the Defendant*

## MEMORANDUM OPINION

**Lewis, District Judge**

THIS MATTER is before the Court on the Motion for Summary Judgment (Dkt. No. 104) filed by Defendant Watersports Adventure Rentals and Equipment, Inc., doing business as Island Flight Adventures ("IFA"). For the reasons that follow, the Court will grant in part and deny in part IFA's Motion.

### I.    BACKGROUND

**A.    Procedural History**

By Complaint filed on November 10, 2009, Plaintiff Denise Jerome initiated the instant action to recover damages for personal injuries allegedly sustained during a jet ski and snorkeling tour conducted in the waters off of Christiansted, St. Croix, United States Virgin

Islands on March 12, 2009. (Dkt. No. 1).[1] On January 13, 2010, Plaintiff sought leave to amend her Complaint to correct an error in the the trade name of the tour provider defendant. (Dkt. No. 3). The Court granted her request (Dkt. No. 4), and on March 15, 2010, Plaintiff filed an Amended Complaint against IFA, claiming that her injuries were the result of IFA's negligence or gross negligence/recklessness. (Dkt. No. 7). IFA filed an Answer (Dkt. No. 11), and discovery was thereafter conducted.

On January 16, 2012, IFA filed the instant Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(a) (Dkt. No. 104); its statement of allegedly undisputed material facts with supporting exhibits (Dkt. No. 105); and a supporting Memorandum with additional exhibits (Dkt. No. 106).[2] In its filings, IFA contends that it is entitled to summary judgment because: (1) Plaintiff's negligence claim is barred by a release of liability ("the Release") (Dkt. No. 105-2) that she executed before participating in the tour; and (2) the evidence does not establish gross negligence as a matter of law. In opposition to IFA's Motion, Plaintiff filed a Memorandum (Dkt. No. 132); a Response to IFA's statement of undisputed facts

---

[1] The parties alternatively refer to the self-propelled personal watercraft involved in this case as both "jet skis" and "wave runners." For ease of reference, the Court will refer to such watercraft as jet skis.

[2] IFA's motion is titled "Motion for Summary Judgment *and Judgment on the Pleadings*" (Dkt. No. 104) (emphasis added). However, in its supporting Memorandum (Dkt. No. 106 at 17), IFA concedes that the Motion must be treated as one for summary judgment if the matters outside the pleadings which are presented by the parties are considered by the Court. *See* Fed. R. Civ. P. 12(d) (stating that if, on a motion for judgment on the pleadings, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56").

(Dkt. No. 130); and a counter-statement of facts with supporting exhibits (Dkt. No. 131).[3] IFA filed a Reply on April 17, 2012 (Dkt. No. 135).

**B.     Factual Background**

From the filings, it is evident that there is no genuine dispute as to many—although not all—of the material facts at issue in this case. Specifically, the parties agree that on the morning of March 12, 2009, Plaintiff came to the office of IFA with another individual, Kevin Jones. (Dkt. No. 105 at ¶ 3; Dkt. No. 130 at ¶ 3). The sister of Mr. Jones had prepaid for a jet ski tour provided by IFA, which also included snorkeling in the waters surrounding Green Cay National Wildlife Refuge ("Green Cay"), an island off the coast of St. Croix. (Dkt. No. 105 at ¶¶ 3-4; Dkt. No. 130 at ¶¶ 3-4). While at IFA's office, Plaintiff was given the Release (Dkt. No. 105-2) and an opportunity to read the document. (Dkt. No. 105 at ¶¶ 5, 7; Dkt. No. 130 at ¶¶ 5, 7). She read the Release and signed it. (Dkt. No. 105 at ¶¶ 7-8; Dkt. No. 130 at ¶¶ 7-8; *see also* Dkt. No. 105-2). Thereafter, Plaintiff rode as a passenger on the IFA jet ski operated by Mr. Jones. (Dkt. No. 105 at ¶¶ 5, 7; Dkt. No. 130 at ¶¶ 5, 7). Michael Mahon, an employee of IFA, was a tour guide on the trip. (Dkt. No. 105 at ¶ 10; Dkt. No. 130 at ¶ 10).

---

[3] Local Rule of Civil Procedure 56.1(b) provides, *inter alia*, that the party adverse to a motion for summary judgment "must address the facts upon which the movant has relied . . . either (i) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) demonstrating that the fact is disputed . . . . In addition, the respondent may file a concise statement of any additional facts that the respondent contends are material to the motion for summary judgment and as to which the respondent contends there exists a genuine issue to be tried." LRCi 56.1(b). Plaintiff's Response to Defendant's Statement of Undisputed Facts and Plaintiff's Counter-Statement of Facts in Opposition to Defendant's Motion (Dkt. Nos. 130, 131) violate the Local Rule, in that they are—in various parts—non-responsive, argumentative, conclusory, and improperly used by Plaintiff to argue her case-in-chief. Such responses serve only to obscure, not clarify, the issues. Accordingly, the Court will not entertain arguments advanced in those filings.

At some point during the tour, Plaintiff disembarked from the jet ski to snorkel in the waters off of Green Cay. While she was swimming back to the jet ski upon which Mr. Jones was seated, the jet ski under the control of Mr. Mahon hit the back of her head. (Dkt. No. 105 at ¶ 10; Dkt. No. 130 at ¶ 10; *see also* Dkt. No. 131-1 at 22-23). The parties dispute how the impact occurred, and cite conflicting witness statements to support their respective accounts. IFA contends that the motor in Mr. Mahon's jet ski was either off or in the idle position when the jet ski hit Plaintiff, and that the impact was the result of the jet ski being moved by a wave. (Dkt. No. 105 at ¶ 10). Plaintiff asserts that Mr. Mahon's jet ski was under power when it struck the back of her head, knocking her forward and into the jet ski upon which Mr. Jones was seated. (Dkt. No. 130 at ¶ 10).[4]

## II.     LEGAL PRINCIPLES

On a motion for summary judgment, the movant must show that there is "no genuine dispute as to any material fact," such that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To be material, a fact must have the potential to alter the outcome of the case. *See*

---

[4] In her Response to IFA's statement of undisputed facts, Plaintiff also requests leave to depose Halston Francis—the other IFA tour guide present on March 12, 2009—pursuant to Fed. R. Civ. P. 56(d). (Dkt. No. 130 at ¶ 11). Under Rule 56(d), a court may, *inter alia*, permit the taking of additional discovery if the nonmoving party at the summary judgment stage "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). The Court notes that the Third Circuit has interpreted this rule to require "'a party seeking further discovery in response to a summary judgment motion [to] submit an affidavit specifying, for example, what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained.'" *Pa. Dep't of Pub. Welfare v. Sebelius*, 674 F.3d 139, 157 (3d Cir. 2012) (quoting *Dowling v. City of Phila.*, 855 F.2d 136, 139-40 (3d Cir. 1988)). Plaintiff has not complied with this requirement. In any event, additional discovery is unnecessary here because Plaintiff has already identified evidence which contradicts Defendant's account of the accident, thereby justifying her opposition to Defendant's Motion.

*Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006). "[D]isputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (citation omitted). In adjudicating a summary judgment motion, the court must view the facts "in the light most favorable to the nonmoving party." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "After the movant shows that there is no genuine issue for trial, the non-moving party then bears the burden of identifying evidence that creates a genuine dispute regarding material facts." *N. Hudson*, 455 F.3d at 475 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation and quotation marks omitted).

### III.     DISCUSSION

In its Motion, IFA asserts that the Court should grant summary judgment in its favor because exculpatory clauses in the Release bar Plaintiff's negligence claim, and the undisputed facts do not amount to gross negligence. Before addressing these contentions, the Court must determine whether admiralty law governs this action.

**A.     Admiralty Jurisdiction**

Plaintiff's Amended Complaint invokes diversity of citizenship as the basis for the Court's jurisdiction in this matter (Dkt. No. 7 at ¶ 1), but admiralty jurisdiction may also apply.[5]

---

[5] The Court's subject matter jurisdiction over admiralty actions is grounded in 28 U.S.C. § 1333, which provides in pertinent part that "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1).

Because the parties' initial filings did not address this jurisdictional issue, the Court ordered supplemental briefing on February 8, 2013. (Dkt. No. 199 at 1). In their supplemental memoranda, both parties assert that admiralty law governs the substantive claims in this action. (Dkt. No. 205 at 3; Dkt. No. 206 at 7). For the reasons that follow, the Court agrees.

Resolution of the admiralty jurisdiction question is essential because the Court must determine whether it is obligated to apply federal maritime law to the substantive issues in this case. *See East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864 (1986) (determining whether admiralty jurisdiction existed even though the case was properly brought in diversity because "[w]ith admiralty jurisdiction comes the application of substantive admiralty law"); *Gibbs v. Carnival Cruise Lines*, 314 F.3d 125, 131 (3d Cir. 2002) (stating that "courts apply substantive admiralty law to claims that sound in admiralty regardless of whether the complaint invokes diversity or admiralty jurisdiction") (citation omitted); *Piché v. Stockdale Holdings, LLC*, 51 V.I. 657, 662 (D.V.I. 2009) (considering admiralty jurisdiction *sua sponte* and applying it in a personal injury action for injuries sustained during a boating tour off of St. Thomas, U.S.V.I.); *Dadgostar v. St. Croix Fin. Ctr., Inc.*, No. 1:10-cv-00028, 2011 U.S. Dist. LEXIS 106278, *8-14 (D.V.I. Sept. 19, 2011) (applying admiralty law to personal injury claim where plaintiff was allegedly struck by a boater while swimming to Green Cay from St. Croix). Thus, the Court must determine if this case "sounds in admiralty." *Gibbs*, 314 F.3d at 131.

As the Third Circuit explained:

In *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995), the Supreme Court summarized prior precedent and articulated a three-point test for ascertaining when a case sounds in admiralty. First, the incident must have "occurred on navigable water or . . . [be an] injury suffered on land [that] was caused by a vessel on navigable water." *Id.* at 534. Second, a court must "assess the general features of the type of incident involved to determine whether the incident has a potentially disrupting impact on maritime commerce."

> *Id.* (internal quotations omitted). Finally, a court must "determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Id.* (internal quotations omitted).

*Id.* at 131-32. Here, the Court concludes that Plaintiff's claims sound in admiralty.

The first factor—location—is satisfied because the accident in question occurred on the navigable waters surrounding Green Cay, an island off the coast of St. Croix. *Dadgostar*, 2011 U.S. Dist. LEXIS 106278 at *10 (considering allegations that Plaintiff was struck by a boat while swimming to Green Cay and concluding that "Plaintiff was injured in the navigable waters surrounding St. Croix, satisfying the location test"); *see also Piché*, 51 V.I. at 662 (finding location test satisfied where injury occurred "on navigable water off the coast of St. Thomas"); *Oran v. Fair Wind Sailing, Inc.*, No. 08-0034, 2009 U.S. Dist. LEXIS 110350, *15-16 (D.V.I. 2009) ("The incident occurred aboard [a catamaran] while sailing in the navigable waters off the coast of St. Thomas, which is sufficient to meet [the location] portion of the test.").

The second factor is met because injuries caused by maritime tour providers have the potential to disrupt maritime commerce. *See Oran*, 2009 U.S. Dist. LEXIS 110350 at *16 ("Injuries occurring aboard those vessels engaged in maritime commerce necessarily have the potential to disrupt such commerce[.]") (collecting cases); *Piché*, 51 V.I. at 663 ("[I]njuries sustained by paying passengers on vessels clearly have the potential to disrupt maritime commerce.") (citation omitted).[6]

---

[6] Pleasure craft, including jet skis, are "vessels" in the admiralty context. *See Gorman v. Cerasia*, 2 F.3d 519, 523 (3d Cir. 1993) (concluding that pleasure craft are covered under the Shipowner's Limitation of Liability Act, 46 U.S.C. § 30501 et seq., a statutory provision for limiting liability which is extended to "all seagoing vessels") (citations omitted); *Keys Jet Ski, Inc. v. Kays*, 893 F.2d 1225, 1226 (11th Cir. 1990) (concluding that a jet ski is a pleasure craft covered under the Shipowner's Limitation of Liability Act).

The third factor is satisfied because recreational maritime tours bear a substantial relationship to traditional maritime activity. *See Piché*, 51 V.I. at 663 (concluding that this element was satisfied where a passenger was injured on a powerboat excursion which included a snorkeling tour).

The conclusion that personal injury actions, like the instant case, sound in admiralty is not novel. As the Court in *Dadgostar* previously noted:

> Courts have routinely found that tort claims against boat drivers arising out of striking swimmers in navigable waters, such as those here, are sufficiently connected to maritime activity to warrant admiralty jurisdiction. *See, e.g., Neely v. Club Med Management Services, Inc.*, 63 F.3d 166, 179 (3d Cir. 1995) (admiralty jurisdiction existed when the plaintiff, a scuba instructor on defendant's boat, was sucked under boat after boat unexpectedly engaged its engines); *Medina v. Perez*, 733 F. 2d 170, 171 (1st Cir. 1984) (admiralty jurisdiction existed with respect to tort action brought by swimmers who were hit by pleasure boat some 120 feet away from public beach in navigable waters); *Peemoller Sultan v. Pleasure Craft Contender 25'*, 139 F. Supp. 2d 230, 234 (D.P.R. 2001) (applying admiralty law to case involving a boat strike on a snorkeler near coast of Puerto Rico); *Schumacher v. Cooper*, 850 F. Supp. 438, 447 (D.S.C. 1994) ("Personal injury negligence actions arising from a collision between a pleasure boat and a swimmer on a lake in South Carolina are within the admiralty jurisdiction of this court.").

*Dadgostar*, 2011 U.S. Dist. LEXIS 106278 at *11-12. Accordingly, the Court will apply substantive admiralty law to Plaintiff's claims. *Gibbs*, 314 F.3d at 131.

**B.    Negligence Claim**

IFA argues that it is entitled to summary judgment on Plaintiff's negligence claim because it is exempt from liability for such claims based on the clear language of the Release Plaintiff executed before participating in the tour. Plaintiff, in turn, contends that the Release is ambiguous and unenforceable. For the reasons discussed below, the Court concludes that the Release is unambiguous, enforceable, and bars Plaintiff's negligence claim.

In *Piché v. Stockdale Holdings, LLC*, the Court was called upon to address the enforceability of exculpatory clauses contained in a release signed prior to participating in a maritime recreational tour.[7] There, the Court explained that "[a] maritime contract 'should be read as a whole and its words given their plain meaning unless the provision is ambiguous.'" *Piché*, 51 V.I. at 667 (quoting *Weathersby v. Conoco Oil Co.*, 752 F.2d 953, 955 (5th Cir. 1984)). The Court stated that "where the relationship between the parties does not involve an inherent risk of overreaching, an exculpatory clause may validly exempt a party from all liability for ordinary negligence." *Id.* at 666-67 (citations omitted). However, "an exculpatory clause may not exempt a party from liability for gross negligence." *Id.* at 664 (citations omitted). The Court noted that "[u]nder admiralty law, it is universally agreed that exculpatory clauses . . . must be clearly and unequivocally expressed." *Id.* (internal citations and quotation marks omitted). Thus, maritime recreational tour releases may bar ordinary negligence claims where the release "(1) clearly and unequivocally indicate[s] the intentions of the parties, and (2) [is not] inflicted by a monopoly, or a party with excessive bargaining power." *Id.* at 667.

The Release in this case is a three-page document consisting of four sections, the first, third, and fourth of which bear Plaintiff's signature and the date March, 12, 2009. The second section includes Plaintiff's handwritten name printed in a blank space designed to indicate who is agreeing to the terms of that section. The first three sections contain broad language purporting to exculpate IFA from potential liability, as well as providing IFA's rules for operating the jet

---

[7] The plaintiff in *Piché* filed suit to recover damages for injuries sustained on a powerboat excursion operated by Captain Nautica off the coast of St. Thomas. Plaintiff was propelled from his seat and injured when the vessel hit a wave. *Id.*, 51 V.I. at 660.

ski. The fourth section is a declaration that the signator is fit to participate in water sport activities. (Dkt. No. 105-2 at 2-4).

The first section, entitled "RENTAL AGREEMENT and RELEASE of LIABILITY[,]" provides in pertinent part:

> I voluntarily assume all risk of accident or damage to my person or property, which may be incurred from or be connected in any manner with my use, operation, or rental of a vehicle from IFA. I hereby release IFA and its agents and employees from all claims, demands, actions and from all liability for damage, loss or injury (of whatever kind, nature or description) that may arise out of, or I may sustain, in connection with my use, operation or rental from IFA. I further agree to indemnify and save harmless IFA and their agents and employees from all claims, demands, actions or causes of actions [sic], including any fees, expenses and costs, of myself or of third parties (of whatever nature or description), which may arise out of, or in any manner be connected with, or caused by my use . . . , operation or rental of a vehicle from IFA . . . . I understand that this release and indemnification applies to any incident whether based on my negligence, the negligence of third parties, or the negligence of IFA.

(*Id.* at 2). The second section, "**PERSONAL WATERCRAFT RENTAL OPERATIONS RELEASE OF LIABILITY, WAIVER OF CLAIMS, EXPRESS ASSUMPTION OF RISK AND INDEMNITY AGREEMENT**[,]" states:

> I *Denise Marie Jerome* [handwritten] do hereby affirm and acknowledge that I have been fully informed of the inherent hazards and risks associated with motorized (e.g. jetski/waverunner) or non-motorized (e.g. kayak) and related water sport activities (wakeboarding, tubing, snorkeling) to which I am about to engage, including but not limited to:
> . . .
> 2. Collision with any of the following: a) other participants b) the watercraft, c) other watercraft[,] d) manmade or natural objects, e) shuttle boat[.]

(*Id.* at 3). The third section, with the heading "**Release of Liability, Waiver of Claims and Indemnity Agreement**[,]" includes the following language:

> I hereby agree as follows:
>
> 1. To waive and release any and all claims based upon negligence, active or passive, with exception of intentional, wanton, or willful misconduct that I may

> have in the future against all of the following named persons or entities herein referred to as releases. [IFA] . . . [and]
> 2. To release the releases, their officers, directors, employees, representatives, agents, and volunteers, and vessels from liability and responsibility whatsoever and for any claims or causes of action that I, my estate, heirs, executors, or assigns may have for personal injury, property damage, or wrongful death arising from the above activities whether caused by active or passive negligence of the releases or otherwise, with the exception of gross negligence. By executing this document, I agree to hold the releases harmless and indemnify them in conjunction with any injury or loss of life that may occur as a result in [sic] engaging in the above activities.

(*Id.*)

The Court finds that the parties' intent in entering into the Release is clear and unequivocal: to exempt IFA from liability stemming from the jet ski tour, with the exception of liability arising from gross negligence. This is the only reasonable reading of the Release which provides, *inter alia*, that:

- "[Plaintiff] hereby release[s] IFA and its agents and employees from all claims, demands, actions and from all liability for damage, loss or injury (of whatever kind, nature or description) that may arise out of, or I may sustain, in connection with my use, operation or rental from IFA."

- "[Plaintiff] further agree[s] to indemnify and save harmless IFA and their agents and employees from all claims, demands, actions or causes of actions [sic], including any fees, expenses and costs, of myself or of third parties (of whatever nature or description), which may arise out of, or in any manner be connected with, or caused by my use . . . , operation or rental of a vehicle from IFA[.]"

- "[Plaintiff] hereby agree[s] . . . [t]o waive and release any and all claims based upon negligence, active or passive, with exception of intentional, wanton, or willful misconduct that I may have in the future against . . . [IFA]."

(*Id.* at 2-3). Such broad language unambiguously evinces the parties' intent to shift the risk of loss arising from injury to Plaintiff and to protect IFA from any potential personal injury claims by Plaintiff, "with the exception of gross negligence" claims. (*Id.* at 3). This sweeping shifting of risk of loss necessarily includes the risk of being struck by a watercraft, as occurred here. The

11

Release could not be more explicit in this regard, as it even notes that Plaintiff does "hereby affirm and acknowledge that I have been fully informed of the inherent hazards and risks associated with motorized . . . water sport activities . . . to which I am about to engage, including but not limited to . . . [c]ollision with . . . other watercraft[.]" (*Id.*).

With respect to Plaintiff's negligence claim in particular, the release is similarly explicit and unambiguous. It provides that Plaintiff "understand[s] that this release and indemnification applies to any incident whether based on my negligence, the negligence of third parties, or the negligence of IFA." (*Id.* at 2). The Release further explains that Plaintiff "waive[s] and release[s] any and all claims based upon negligence, active or passive," but exempts from this waiver claims arising from "gross negligence" or "intentional, wanton, or willful misconduct[.]" (*Id.* at 3). Such language is consistent with admiralty law, which permits parties to waive claims stemming from ordinary negligence, but not from gross negligence. *Piché*, 51 V.I. at 664-67.

The Court's conclusion that the Release at issue is unambiguous is consistent with conclusions reached in other cases. In fact, courts have upheld similarly broad language as barring personal injury and negligence claims. *See, e.g.*, *Piché*, 51 V.I. at 668 (barring negligence, *res ipsa loquitor*, breach of contract, and breach of warranty claims where the release stated that plaintiff agreed to "hold harmless and release forever [defendant] . . . from all rights, claims, demands, damages, costs and causes of action of whatever kind or nature arising from any damages, liabilities, or injuries I may sustain, however caused" as a result of a maritime recreational tour); *Delponte v. Coral World V.I., Inc.*, 233 F. App'x 178, 181 (3d Cir. 2007) (upholding dismissal of negligence claim for aquatic tour injury where plaintiff executed a waiver stating that "I . . . release . . . [defendant] . . . from any and all liability for . . . injury . . . to me . . . resulting from the . . . use of this equipment and for any claim based upon breach of

12

warranty, contract, *or other legal theory* accepting myself the full responsibility for any and all such . . . injury . . . which may result") (original emphasis); *Royal Ins. Co. of Am. v. S.W. Marine*, 194 F.3d 1009, 1014 (9th Cir. 1999) (upholding district court's dismissal of breach of warranty, breach of contract, and negligence claims in an admiralty action where a clause released the defendant from liability for "all claims, losses, damages, liabilities or expenses . . . resulting directly or indirectly from the performance of this Agreement").

The Court also concludes, as in *Piché*, that the Release was not inflicted by a monopoly or a party with excessive bargaining power because Plaintiff freely contracted for non-essential services—an aquatic entertainment excursion—and no allegation or evidence was presented indicating that IFA operated a monopoly on such excursions on St. Croix. *Piché*, 51 V.I. at 670 (concluding that the release "was not inflicted by a monopoly or a party with excessive bargaining power[,]" and that plaintiff "failed to present sufficient evidence to show otherwise"). Accordingly, the Court finds that the release is unambiguous and enforceable under maritime law.

Plaintiff seeks to avoid this conclusion by arguing that the exculpatory provisions of the Release do not apply in this case because "she was not the renter, operator or user of any vehicle, and . . . her injury did not arise from her operating, using or renting any [personal watercraft] from [IFA]." (Dkt. No. 132 at 5). Plaintiff further argues that the list of related water sport activities covered by the Release (wakeboarding, tubing, and snorkeling) (Dkt. No. 105-2 at 3), "does not include swimming or simply being in the water." (Dkt. No. 132 at ¶ 8). These arguments are unpersuasive and unsupported by Plaintiff's own accounts of the events in question.

In stark contrast to her contention that she did not rent, operate, or use the jet ski, Plaintiff states on the next page of her Memorandum and in her Counter-Statement of Facts in Opposition to Defendant's Motion that she was a "passenger on the wave runner rented by Mr. Jones[.]" (*Id.* at 6; *see also* Dkt. No. 131 at ¶ 6). The Court is not convinced by Plaintiff's assertion that a passenger of a jet ski does not *use* the jet ski. Furthermore, by Plaintiff's own account, she was struck by the jet ski operated by Mr. Mahon after she finished the snorkeling portion of the IFA tour and while she was swimming back to the jet ski as instructed by IFA tour guides. (Dkt. No. 131-1 at ¶ 22). Clearly such an injury falls within the broad ambit of the Release which provides that Plaintiff "release[s] IFA . . . from all claims, demands, actions and from all liability for damage, loss or injury (of whatever kind, nature or description) that may arise out of, or I may sustain, *in connection with my use, operation or rental from IFA*." (Dkt. No. 105-2 at 2) (emphasis added). This is especially so given the sheer illogic of suggesting that, although snorkeling was part of the tour and admittedly covered by the Release, swimming to and from the jet ski—or otherwise being in the water—for purposes of engaging in the snorkeling activity is somehow excluded from the Release.[8]

Plaintiff also argues that the Court may refuse to enforce the Release because it is unconscionable. (Dkt. No. 132 at 21) (citing Third Circuit case law and RESTATEMENT (SECOND) OF CONTRACTS § 208). The Court agrees with IFA's contention that the release is not unconscionable.

---

[8] Such an argument is not only illogical, but ignores the fact that swimming is expressly referenced in the Release. For example, one's ability to swim is listed among the inherent hazards and risks associated with the water sport activities. (Dkt. No. 105-2 at 2). Further, under the Rules, one is directed to "swim to the rear of the [jet ski] and turn it upright" if it capsizes. (*Id.* at 1).

A court may refuse to enforce a contract or term of a contract that is unconscionable at the time the contract is made. *Edwards v. Hovensa*, 497 F.3d 355, 362 (3d Cir. 2007) (citing RESTATEMENT (SECOND) OF CONTRACTS § 208). Unconscionability encompasses both procedural and substantive elements, and both must be proven to revoke a contract on that basis. *Alexander v. Anthony Intern., L.P.*, 341 F.3d 256, 265 (3d Cir. 2003). A contract that is prepared by the party with greater bargaining power and presented to the other party on a take-it-or-leave-it basis is known as a contract of adhesion and is generally found to be procedurally unconscionable. *Id.* (citations omitted). However, "an adhesion contract is not necessarily unenforceable. The party challenging the contract therefore must also establish substantive unconscionability." *Id.* (citations omitted.) Substantive unconscionability is found where there are "terms that unreasonably favor one party to which the disfavored party does not truly assent." *Id.* (citing RESTATEMENT (SECOND) OF CONTRACTS § 208 cmt. d.). "[T]he burden of proving such unconscionability lies with the party challenging the contract provision." *Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 277 (3d Cir. 2004) (citations omitted). "If a contract or term thereof is unconscionable at the time the contract is made a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any unconscionable result." *Id.* at 276 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 208).

Here, although the Release appears to have been presented on a take-it-or-leave-it basis, Plaintiff has failed to carry the burden of demonstrating that it is substantively unconscionable. While the Release unquestionably shifts the risks associated with participating on the jet ski tour to Plaintiff, there is no indication that these are terms that unreasonably favor IFA to which Plaintiff did not truly assent. *See Alexander*, 341 F.3d at 265; *Reynolds v. Islands Mech. Contrs.,*

*Inc.*, No. 09-cv-83, 2010 U.S. Dist. LEXIS 119811, *12 n.4 (D.V.I. Nov. 10, 2010) (noting that a bargain is not unconscionable "merely because the parties to it are unequal in bargaining position, nor even because the inequality results in an allocation of risks to the weaker party") (quoting RESTATEMENT (SECOND) OF CONTRACTS § 208 cmt. d.). Indeed, Plaintiff affixed her signature to the Release, indicating that she "voluntarily assume[d] all risk of accident or damage to [her] person or property . . . [,]" after "ACKNOWLEDGING THAT THE OPERATION OF ANY WATER VEHICLE IS DANGEROUS[,]" and while "affirm[ing] and acknowledg[ing] that [she had] been fully informed of the inherent hazards and risks associated with [the activities in] which [she was] about to engage . . . ." (Dkt. No. 105-2 at 2-3). Moreover, in agreeing to the "[e]xpress [a]ssumption of risk" and affirming and acknowledging that she was informed of the dangers of the water sport activities, Plaintiff was cautioned by the Release to "[p]lease read and be certain you understand the implications of signing." (*Id.* at 3). The Release also includes a statement that "[Plaintiff] certif[ies] that I have read this Agreement and I understand its contents and intents" (Dkt. No. 105-2 at 1), and Plaintiff does not argue to the contrary. Rather, Plaintiff acknowledges that she was given an opportunity to read the Release (Dkt. No. 130 at ¶ 7); that she read it (*id.* at ¶ 8); and that she signed it (*id.* at ¶ 7).

The conclusion that Plaintiff has not shown a lack of assent to the terms is further supported by the fact that the Release at issue covers participation in an admittedly risky and purely recreational activity, as opposed to an essential service. *See In re Aramark Sports & Entm't Servs., LLC*, No. 2:09-CV-637-TC, 2012 U.S. Dist. LEXIS 123786, *14-15 (D. Utah Aug. 29, 2012) (rejecting the argument that plaintiff unreasonably lacked bargaining power while signing a form release and noting that such "argument does not succeed in the context of inherently risky recreational activities"); *Olivelli v. Sappo Corp., Inc.*, 225 F. Supp. 2d 109, 119

16

(D.P.R. 2002) (holding that form contract containing exculpatory clause for use in scuba diving lessons was not an adhesion contract because it was not "inherently unfair").

In short, Plaintiff's arguments do not alter the Court's conclusion that the Release is unambiguous and enforceable.[9] Accordingly, Plaintiff's negligence claim is barred, and the Court will enter summary judgment in IFA's favor on that claim.

## C.     Gross Negligence Claim

IFA claims that it is entitled to summary judgment on Plaintiff's gross negligence claim because the evidence does not support such a claim as a matter of law. The Court concludes otherwise, and will deny IFA's Motion for Summary Judgment in this regard.

Because the Court's jurisdiction is grounded in admiralty, the Court "looks to the common law in considering maritime torts." *Royal Ins. Co. of Am.*, 194 F.3d at 1015 (citing *Su v. M/V S. Aster*, 978 F.2d 462, 472 (9th Cir. 1992)); *Stevens Tech. Servs. v. Mormac Marine Enters.*, No. 01 CV 8391 (ARR), 2004 U.S. Dist. LEXIS 26388, *28 (E.D.N.Y. 2004) (citing same). "The Restatement of Torts defines ordinary negligence as 'conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm.'" *Thomas v. Rijos*, 780 F. Supp. 2d 376, 385 (D.V.I. 2011) (quoting RESTATEMENT (SECOND) OF TORTS, § 282). "Gross negligence, then, is conduct that presents 'an unreasonable risk of

---

[9] Plaintiff also contends that the Release should not be enforced because the formatting and wording of the agreement violate the Virgin Islands' Plain Language Act, V.I. Code Ann. tit. 12A, § 251 *et seq*. (Dkt. No. 132 at 18). This argument fails because the Plain Language Act applies to "consumer contracts," which do not include contracts for entertainment services such as the tour provided by IFA. *Piché*, 51 V.I. at 670 n.7 (concluding that a powerboat tour was an entertainment service not covered by the Act); *Delponte*, 223 F. App'x at 180 (finding that an underwater tour was an entertainment service not contemplated by the Act). Moreover, even if the Act applied to such entertainment contracts, the Act does not bar the enforcement of contracts unless they are unconscionable, *Delponte*, 223 F. App'x at 180, which, as discussed above, is not the case here.

physical harm to another . . . that . . . is *substantially greater* than that which is necessary to make the conduct negligent.'" *Id.* at 385-86 (original emphasis, citations omitted).

In the instant case, witness statements provide conflicting accounts regarding how the jet ski operated by IFA's tour guide, Mr. Mahon, came into contact with Plaintiff. IFA cites to evidence indicating that the motor in Mr. Mahon's jet ski was either off or in the idle position when the jet ski contacted Plaintiff, and that the impact was the result of his jet ski being moved by a wave. (Dkt. No. 105 at ¶ 10). Plaintiff, in turn, cites to evidence indicating that Mr. Mahon's jet ski was under power when it struck the back of her head, knocking her forward and into the jet ski upon which Mr. Jones was seated. (Dkt. No. 130 at ¶ 10). Plaintiff further contends that Mr. Mahon's operation of the jet ski was in clear violation of the safety training they received and IFA's own jet ski operating rules. (*See* Dkt. No. 132 at 1-2; Dkt. No. 105-2 at 1).

The Court may not resolve these genuine disputes of material facts at the summary judgment stage. Instead, it must view the facts in the light most favorable to Plaintiff, the nonmoving party. *Scott*, 550 U.S. at 380. The Court, therefore, will accept as true Plaintiff's account of the accident for purposes of determining whether the evidence supports a gross negligence claim.

Accordingly, the Court must determine whether any "rational trier of fact[,]" *Matsushita*, 475 U.S. at 587, could conclude that a tour guide, while operating his jet ski under power and in violation of the established rules for the operation of the jet ski, was grossly negligent in colliding with a member of his own tour while she was swimming back to her jet ski following a snorkeling tour. The Court finds that a rational trier of fact could reach such a conclusion, determining that operating a jet ski in that fashion created an unreasonable risk of physical injury

that is substantially greater than the risk of harm associated with ordinary negligence. *Thomas*, 780 F. Supp. 2d 376 at 385-86.

Because a rational trier of fact could conclude that IFA was grossly negligent, the Court will deny IFA's Motion to the extent it seeks summary judgment on that claim.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's negligence claim is barred by the Release she executed prior to the accident which gave rise to this lawsuit. There are genuine factual disputes, however, regarding how the accident actually occurred. Viewing the disputed facts in the light most favorable to Plaintiff, the Court finds that a rational finder of fact could conclude that the accident was the result of gross negligence. Accordingly, the Court will grant IFA's Motion (Dkt. No. 104) in part and enter summary judgment in favor of IFA with respect to Plaintiff's negligence claim. However, the Court will deny IFA's Motion with respect to Plaintiff's claim of gross negligence. An appropriate Order accompanies this Memorandum Opinion.

Date: February 26, 2013 _____/s/_____
                                                            WILMA A. LEWIS
                                                            District Judge