**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| **DENISE M. JEROME,** )<br>)<br>**Plaintiff,** )<br>**v.** )<br>)<br>**WATER SPORTS ADVENTURE RENTALS** )<br>**AND EQUIPMENT, INC., d/b/a/ ISLAND** )<br>**FLIGHT ADVENTURES,** )<br>)<br>**Defendant.** )<br>_____ ) | Civil Action No. 2009-092 |

**Attorneys:**
**A. Jeffrey Weiss, Esq.,**
St. Thomas, U.S.V.I.
    *For the Plaintiff*

**Robert L. King, Esq.,**
St. Thomas, U.S.V.I.
    *For the Defendant*

## MEMORANDUM OPINION

**Lewis, District Judge**

    THIS MATTER is before the Court on the "Motion for Partial Summary Judgment" (Dkt. No. 175) filed by Defendant Watersports Adventure Rentals and Equipment, Inc., doing business as Island Flight Adventures ("IFA"), seeking to limit its liability in this personal injury action pursuant to the Limitation of Shipowners' Liability Act, 46 U.S.C. §§ 30501-30512. Plaintiff opposes the Motion. Because there are factual disputes that preclude the resolution of the limitation issue on the existing record, the Court will deny IFA's Motion.

### I.  BACKGROUND

    By Complaint filed on November 10, 2009, Plaintiff Denise Jerome initiated the instant action to recover damages for personal injuries allegedly sustained during a jet ski and

snorkeling tour provided by IFA in the waters off of Christiansted, St. Croix, United States Virgin Islands on March 12, 2009. (Dkt. No. 1).[1] Plaintiff filed an Amended Complaint on March 15, 2010, claiming that IFA is liable for her injuries under theories of negligence and gross negligence because a jet ski operated by one of IFA's employees, Michael Mahon, struck her in the head while she was swimming back to the jet ski following the snorkeling portion of the tour. (Dkt. No. 7). IFA filed an Answer on March 29, 2010 and an Amended Answer on April 7, 2010 (Dkt. Nos. 10, 11). Discovery was conducted thereafter.

After the close of discovery, IFA filed a Motion for Summary Judgment asserting that: (1) Plaintiff's negligence claim is barred by a release of liability she executed before participating on the tour; and (2) the evidence does not establish gross negligence as a matter of law. (Dkt. No. 104). Plaintiff opposed the Motion. While most of the facts were not disputed, the parties presented conflicting evidence regarding the cause of the accident and whether Mr. Mahon was operating the jet ski under power when it struck Plaintiff. By Memorandum Opinion dated February 26, 2013 (Dkt. No. 214), the Court granted in part and denied in part IFA's Motion. Specifically, the Court found that the release was enforceable and barred Plaintiff's negligence claim, but declined to enter summary judgment on Plaintiff's gross negligence claim after concluding that a rational trier of fact viewing the disputed facts in the light most favorable to the Plaintiff could find that the accident was the result of gross negligence. (*Id.* at 19).

On October 29, 2012, IFA filed the instant "Motion for Partial Summary Judgment" (Dkt. No. 175) seeking to limit its liability pursuant to the Limitation of Shipowners' Liability Act, 46

---

[1] The Court detailed the factual and procedural history of this case in its Memorandum Opinion issued on February 26, 2013 (Dkt. No. 214). The present discussion, therefore, will be limited to the background necessary for the resolution of the instant Motion.

U.S.C. §§ 30501-30512. In support of the Motion, IFA filed a "Statement of Undisputed Facts" (Dkt. No. 176), a Memorandum (Dkt. No. 177), and supporting exhibits (Dkt. Nos. 176-1–176-7, 177-1–177-7).[2] After requesting and receiving three extensions of time to respond (*see* Dkt. Nos. 179, 181, 186), on January 7, 2013, Plaintiff filed an Opposition to the Motion (Dkt. No. 184), "Plaintiff's Response to Defendant's Statement of Undisputed Facts" (Dkt. No. 183), and supporting exhibits (Dkt. Nos. 183-1–183-12). In her filings, Plaintiff contends that IFA's Motion is untimely and lacks merit. After requesting and receiving two extensions of time to respond (*see* Dkt. Nos. 186, 191), IFA filed a Reply on February 4, 2013 (Dkt. No. 195). The matter is now ripe for consideration.

## II.    LEGAL PRINCIPLES

The Limitation of Shipowners' Liability Act, 46 U.S.C. §§ 30501-30512 (formerly 46 U.S.C. App. §§ 181-189) (the "Limitation Act"), is "a statute that has been part of the fabric of our laws since 1851," and "operates to shield from liability shipowners charged with wrongdoing committed without their privity or knowledge." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 517 (2008). As the Supreme Court has explained, "Congress passed the Limitation Act in 1851 'to encourage ship-building and to induce capitalists to invest money in this branch of industry.'" *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 446 (2001) (quoting *Norwich Co. v. Wright*, 80 U.S. 104, 121 (1872)). The Limitation Act "also had the purpose of 'putting American shipping upon an equality with that of other maritime nations' that had their own limitation acts." *Id.* at 446-47 (quoting *The Main v. Williams*, 152 U.S. 122, 128 (1894)).[3]

---

[2] IFA attached the same seven exhibits to both the Statement of Facts and the Memorandum.

[3] Although drafted for the commercial shipping context, the Courts of Appeals that have addressed the issue have held that the Limitation Act, based on its unambiguous language, also

To achieve these aims, the Limitation Act "limits the owner of a vessel's liability for, among other things, 'any loss, damage, or injury by collision . . . done, occasioned, or incurred without the privity or knowledge of the owner,' to 'the value of the vessel and pending freight.'" *In re City of New York*, 522 F.3d 279, 283 (2d Cir. 2008) (quoting 46 U.S.C. § 30505(b)); *see also Lewis*, 531 U.S. at 446 ("The [Limitation] Act allows a vessel owner to limit liability for damage or injury, occasioned without the owner's privity or knowledge, to the value of the vessel or the owner's interest in the vessel."); *Gorman v. Cerasia*, 2 F.3d 519, 522 (3d Cir. 1993) ("The [Limitation] Act provides that the liability of a shipowner for any damage arising from a maritime accident which occurs 'without the privity or knowledge of such owner' shall not exceed the value of the vessel and its freight.") (quoting prior codification at 46 U.S.C. App. § 183(a)).[4] Thus, "[i]nstead of being vicariously liable for the full extent of any injuries caused

---

applies to pleasure craft. *Gorman v. Cerasia*, 2 F.3d 519, 523 (3d Cir. 1993) (collecting cases); *see also Keys Jet Ski, Inc. v. Kays*, 893 F.2d 1225, 1226 (11th Cir. 1990) ("agree[ing] that a jet ski is a pleasure craft" and "hold[ing] that pleasure craft are covered by the Limitation [] Act").

[4] The Limitation Act is now codified, as amended, at 46 U.S.C. §§ 30505-30512, having undergone stylistic revisions in 2006. *See* Pub. L. 109-304, § 6, 120 Stat. 1513. Section 30505 provides in its entirety:

> § 30505. General limit of liability
>
> (a) In general. Except as provided in section 30506 of this title, the liability of the owner of a vessel for any claim, debt, or liability described in subsection (b) shall not exceed the value of the vessel and pending freight. If the vessel has more than one owner, the proportionate share of the liability of any one owner shall not exceed that owner's proportionate interest in the vessel and pending freight.
>
> (b) Claims subject to limitation. Unless otherwise excluded by law, claims, debts, and liabilities subject to limitation under subsection (a) are those arising from any embezzlement, loss, or destruction of any property, goods, or merchandise shipped or put on board the vessel, any loss, damage, or injury by collision, or any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of the owner.

by the negligence of the captain or crew employed to operate the ship, the owner's liability is limited to the value of the ship unless the owner himself had 'privity or knowledge' of the negligent acts." *In re City of New York*, 522 F.3d at 283 (citations omitted).

When the Limitation Act is invoked, courts focus on whether the shipowner was "without the privity or knowledge" of the act or condition that caused the injury. *See* 46 U.S.C. § 30505(b); *Carr v. PMS Fishing Corp.*, 191 F.3d 1, 4 (1st Cir. 1999). As the Second Circuit has noted, privity or knowledge "'can be actual or constructive. Either way, the term usually implies some degree of culpable participation or neglected duty on the shipowner's part; that, for example, it committed a negligent act . . . or through the exercise of reasonable diligence could have prevented the commission of the act . . . .'" *Otal Invs. Ltd. v. M/V Clary*, 673 F.3d 108, 115 (2d Cir. 2012) (quoting *Carr*, 191 F.3d at 4); *see also Tittle v. Aldacosta*, 544 F.2d 752, 756 (5th Cir. 1977) ("In the typical situation of a corporate owned ocean vessel the privity and knowledge scrutiny focuses in on whether the shore-based high-level management is aware (or should have been) of the likelihood of the occurrence happening after the ship is underweigh.") (citations omitted). A "captain's negligence or navigational errors," however, are "not within the owner's knowledge or privity *if the vessel's owner has selected a competent captain*." *Otal*, 673 F.3d at

---

(c) Wages. Subsection (a) does not apply to a claim for wages.

46 U.S.C. § 30505.

Section 30506 provides that a vessel owner's liability can be increased from the value of the vessel to "$420 times the tonnage of the vessel" if (1) "the amount of the vessel owner's liability determined under section 30505 . . . is insufficient to pay all losses in full"; and (2) "the portion available to pay claims for personal injury is less than $420 times the tonnage of the vessel[.]" 46 U.S.C. § 30506(b). However, this section does not govern the instant action because § 30506 "applies only to seagoing vessels" and "does not apply to pleasure yachts . . . ." § 30506(a); *see also In re Hartman*, No. 08-5562 (JEI/JS), 2010 U.S. Dist. LEXIS 37764, *19-20 n.15 (D.N.J. Apr. 15, 2010) (concluding that § 30506 did not apply to a jet ski accident).

5

115 (emphasis added, citation omitted). The shipowner bears the burden of demonstrating the lack of privity and knowledge necessary to qualify for the Limitation Act's protections. *Carr*, 191 F.3d at 4; *Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 948 n.14 (3d Cir. 1985)).

### III. DISCUSSION

In her Opposition, Plaintiff contends that IFA's Motion is procedurally barred and lacks merit for several reasons. The Court will address each argument in turn before describing the procedures that will govern the ultimate resolution of this issue.

**A.     Procedural Arguments**

**1.     Dispositive Motions Deadline**

Plaintiff argues that IFA's "Motion for Partial Summary Judgment" should be stricken because it was filed in contravention of the Court's Scheduling Order (Dkt. No. 75), which set March 30, 2012 as the deadline for filing dispositive motions in this case. (Dkt. No. 184 at 2-5). In particular, Plaintiff notes that IFA filed the instant Motion on October 29, 2012, seven months after the deadline for dispositive motions had passed and over nine months after IFA filed a separate Motion for Summary Judgment (Dkt. No. 104). Because IFA failed to file a motion requesting leave to file the instant Motion and demonstrating excusable neglect pursuant to Federal Rule of Civil Procedure 6(b)(1)(B), Plaintiff asserts that the Court should strike the Motion. (Dkt. No. 184 at 2-5).[5]

---

[5] As this Court previously noted, the Third Circuit explained that "'Rule 6(b) and [*Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990)] require motions, untimely under the Rules, to be filed in accordance with the requirements of Rule 6(b)(1)(B). Thus a party must make a formal motion for extension of time and the district court must make a finding of excusable neglect, under the [*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993)] factors, before permitting an untimely motion.'" *Gautier-James v. Hovensa, L.L.C.*, No.

IFA claims that the Motion is timely and its filing did not violate the Court's dispositive motions deadline. Specifically, IFA argues that the Motion is not dispositive because if granted, it would not extinguish or terminate any claim set forth in Plaintiff's Amended Complaint. (Dkt. No. 195 at 2). IFA also contends that the Motion "is in the nature of a motion in limine," which is "styled" as a motion for partial summary judgment because it is supported by affidavit. (*Id.* at 1-2). IFA advanced this argument in its Reply filed on February 4, 2013, over a month before the March 8, 2013 motion *in limine* deadline established by the Court's Trial Management Order (Dkt. No. 209).

The Court agrees that IFA's Motion advances arguments which may properly be raised in a motion *in limine*, and thus was not filed in contravention of the Court's Scheduling Order (Dkt. No. 75). As the Third Circuit has explained, "it is the relief desired, not the title of the motion, that dictates how this Court should view a particular filing." *Gutierrez v. Johnson & Johnson*, 523 F.3d 187, 195 (3d Cir. 2008) (citation omitted); *Eun Hee Choi v. Kim*, 258 F. App'x 413, 415 n.1 (3d Cir. 2007). Moreover, in differentiating between the two types of motions, the Third Circuit has stated that "[u]nlike a summary judgment motion, which is designed to eliminate a trial in cases where there are no genuine issues of fact, a motion *in limine* is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990) (citations omitted).

Here, though IFA's filing is titled a "Motion for Partial Summary Judgment," it does not request that judgment be entered in IFA's favor on some or all of Plaintiff's claims. Instead, it attempts to limit the extent of Plaintiff's potential recovery by seeking resolution of an

---

2006-106, 2012 U.S. Dist. LEXIS 4218, *7-8 n.2 (D.V.I. Jan. 13, 2012) (quoting *Drippe v. Tobelinski*, 604 F.3d 778, 784-85 (3d Cir. 2010)).

underlying issue—whether, pursuant to the Limitation Act, Plaintiff's potential recovery is limited to the value of the jet ski. (*See* Dkt. No. 195). A finding that IFA is entitled to limitation could also narrow the scope of admissible evidence at trial by limiting Plaintiff's presentation regarding damages.[6] Thus, while improperly titled and "styled" as a motion for summary judgment, IFA's motion nonetheless presents an issue that is appropriate for resolution through the vehicle of a motion *in limine*.[7]

In light of the foregoing, the Court will deny Plaintiff's request to strike IFA's Motion as untimely.

**2. Waiver**

Plaintiff next contends that IFA has waived its right to raise the Limitation Act as a defense because: (1) it was not included in IFA's original Answer; and (2) IFA litigated this case for years without seeking an earlier determination on the viability of the defense. (Dkt. No. 184 5-8). Neither argument has merit.

IFA filed an Answer to the Amended Complaint on March 29, 2010 (Dkt. No. 10). IFA's initial pleading did not contain any reference to the Limitation Act. Nine days later on April 7, 2010, IFA filed an Amended Answer which raised, *inter alia*, the Limitation Act as an affirmative defense. While the Amended Answer improperly references the Limitation Act by its

---

[6] As discussed *infra*, Part III.B.2, the Court has concluded in this instance to hear evidence on the limitation issue in conjunction with the trial on the merits and in a phase two proceeding, if necessary.

[7] The Court also notes that Plaintiff had ample opportunity to respond to the improperly styled Motion—having received three extensions of time within which to do so (*see* Dkt. Nos. 179, 181, 186)—before presenting her arguments in opposition. The underlying issue was fully briefed before the motion *in limine* deadline of March 8, 2013. (Dkt. No. 209 at 1). Therefore, the Court will evaluate the merits of the Motion without requiring the parties to reformat their submissions and remove references to the summary judgment standard.

prior codification—46 U.S.C. § 183 *et seq.*—it nevertheless captures the Act's substance by asserting that the occurrence which forms the basis of the Amended Complaint "was caused without the privity or knowledge o[f] the owner of [the] jet ski," and that as a result, Plaintiff is not "entitled to recover damages from [IFA] in any sum in excess of the value of the said vessel or [IFA's] interest in said vessel." (Dkt. No. 11 at 4).[8]

The Court finds that IFA appropriately raised the Limitation Act as an affirmative defense in its Amended Answer. If a shipowner seeks to raise the Limitation Act as a defense after filing an answer, Rule 15 of the Federal Rules of Civil Procedure governing amendment of pleadings applies. 29-708 *Moore's Federal Practice – Civil* § 708.01 ("If the vessel owner seeks to raise limitation as a defense after the initial answer is filed, the provisions of Fed. R. Civ. P. 15 on the amendment of pleadings will apply."); *see also Royal Ins. Co. of Am. v. M/Y Anastasia*, No. 95cv30498/RV, 1997 U.S. Dist. LEXIS 15595, *6-7 (N.D. Fla. 1997) (granting leave to amend answer and add limitation defense); *Baham v. Atl., Gulf & Pac. Co.*, 333 F. Supp. 680,

---

[8] IFA's "Eighth Affirmative Defense" in its Amended Answer provides:

> [IFA] would show there is no liability whatsoever on its part with respect to the matters alleged in Plaintiff's complaint. If, however, it is held that there is liability on its part, [IFA] then pleads and alleges the following defense: The occurrence which forms the basis of Plaintiff's complaint was caused without the privity or knowledge or [sic] the owner of the said jet ski. The amount of damages demanded in the Plaintiff's complaint is anticipated to exceed the value of the involved jet ski. By reason thereof, [IFA] invokes the benefit of the Limitation of Liability Act, 46 [U.S.C.] 183 *et seq.*, under which provision, should there be any liability whatsoever on the part of [IFA] for or by any reason of any matters set forth in the Plaintiff's Complaint, then neither Plaintiff nor any other parties are entitled to recover damages from [IFA] in any sum in excess of the value of the said vessel or [IFA's] interest in said vessel.

(Dkt. No. 11 at 3-4). While Plaintiff describes IFA's assertion of this affirmative defense as "garbled" and "unintelligible" (Dkt. No. 184 at 8), there can be little question as to what the defense refers.

681-82 (E.D. Pa. 1971) (same). Rule 15 provides in pertinent part that "[a] party may amend its pleading once as a matter of course within . . . 21 days after serving it[.]" Fed. R. Civ. P. 15 (a)(1)(A). Here, IFA filed its Amended Answer nine days after serving its initial Answer. Thus, Plaintiff is incorrect in suggesting that IFA needed leave of Court to file its Amended Answer. (Dkt. No. 184 at 8).[9] Because IFA's filing of the Amended Answer with the limitation defense was proper under Rule 15, IFA did not waive its right to raise the Limitation Act by failing to include it in the initial Answer.

Plaintiff's additional argument that IFA waived the Limitation Act defense by litigating this case without seeking an earlier determination of the limitation issue is similarly unpersuasive. "Although it is true that parties should generally assert affirmative defenses early in the litigation, there is no firm rule . . . . Thus, affirmative defenses may be raised at any time, even after trial, so long as the plaintiff suffers no prejudice." *Sharp v. Johnson*, 669 F.3d 144, 158 (3d Cir. 2012) (citing *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 506 (3d Cir. 2006)); *see also Charpentier v. Godsil*, 937 F.2d 859, 864 (3d Cir. 1991) (stating, in the context of failing to plead an affirmative defense, that "a defendant does not waive an affirmative defense if he raised the issue at a pragmatically sufficient time, and the plaintiff was not prejudiced in its ability to respond") (internal quotation marks and citations omitted).

In the instant case, while the Court agrees that earlier briefing on the issue would have been preferable, Plaintiff has not identified any legitimate claim of prejudice resulting from IFA's late briefing of the Limitation Act as a defense. Plaintiff has been on notice of IFA's intent

---

[9] Equally unavailing is Plaintiff's complaint, at this late stage in the proceedings, that an Amended Answer filed three years ago, and in response to which discovery was conducted, failed to comply with Local Rule 15.1's requirement of specifically delineating the changes or additions made to the prior pleading. (*See* Dkt. No. 184 at 8 n.3).

to limit its liability since the issue was raised in the Amended Answer on April 7, 2010, and thus had the opportunity to conduct any necessary discovery. Additionally, as discussed *infra*, Part III.B.2, because the resolution of this issue requires the development of a factual record, the limitation issue can be addressed in tandem with the trial on the merits. Under these circumstances, the Court finds no prejudice to Plaintiff. *See Sharp*, 669 F.3d at 158-59 (finding no prejudice where the pleading of qualified immunity as an affirmative defense in the answer "placed [plaintiff] on notice" and where "trial testimony was necessary to develop the contours of [plaintiff's] claims and to determine certain factual issues" before addressing the qualified immunity defense).

Accordingly, the Court finds that IFA has not waived its right to assert the Limitation Act as a defense.[10]

### 3.  Jurisdiction and Laches

Plaintiff also argues that, because she invoked the Court's diversity jurisdiction and IFA asserted the Limitation Act as an affirmative defense instead of by filing a separate limitation action pursuant to 46 U.S.C. § 30511, the Court lacks jurisdiction to entertain the Limitation Act

---

[10] In her Opposition, Plaintiff analogizes the present situation to cases in which courts found that parties waived their right to require arbitration by extensively litigating the case before seeking to compel arbitration. (Dkt. No. 184 at 5-8). This analogy is inapt because IFA is simply challenging its maximum liability, and not—as in the arbitration cases—the Court's authority to resolve the underlying dispute. Plaintiff also claims that *United States v. AMTRAK*, No. 86-1094, 2004 U.S. Dist. LEXIS 11823 (E.D. Pa. June 15, 2004), supports a finding that IFA waived its Limitation Act defense. (*Id.* at 7). In *AMTRAK*, the Eastern District of Pennsylvania found that a third-party defendant had waived its right to claim that the defendant's contribution claims were barred by a settlement agreement where: (1) the defense was not asserted as an affirmative defense in the third-party defendant's answer filed in 1994; (2) there was no mention of the settlement agreement potentially barring claims at any point prior to a June 30, 2003 status conference; and (3) permitting the defense to proceed would cause "significant prejudice" to the defendant. *Id.* at *8-16. Such circumstances are not present in the instant case.

defense. (Dkt. No. 184 at 10-12).[11] Plaintiff cites *Hellweg v. Baja Boats, Inc.*, 818 F. Supp. 1022 (E.D. Mich. 1993), which supports this proposition, but other courts have disagreed and reached the opposite conclusion. *See e.g.*, *Vatican Shrimp Co., Inc. v. Solis*, 820 F.2d 674, 678 (5th Cir. 1987) (concluding that a federal district court sitting in diversity "having jurisdiction to hear the entire case initially filed with it, can adjudicate and rule on a limited liability issue that is raised in a properly filed answer"); *Murray v. N.Y. Cent. R.R. Co.*, 287 F.2d 152, 154 (2d Cir. 1961) (concluding that it would be "unreasonable" for the availability of limitation to "turn on whether a plaintiff elects to bring a suit on the admiralty side or the civil side" of a federal court); *Grindle v. Fun Charters*, 962 F. Supp. 1284, 1288 (D. Haw. 1996) (adopting "the sensible rule that a federal district court can hear a limitation defense even if it is sitting in diversity").

The Court finds convincing the reasoning of the Second and Fifth Circuit Courts of Appeals that a district court sitting in diversity has jurisdiction to entertain the Limitation Act defense properly raised in an answer. The Court, therefore, will reject Plaintiff's argument and will entertain the Limitation Act defense.

---

[11] The protections of the Limitation Act may be invoked by raising an affirmative defense in an answer or by initiating a separate limitation action. As the Supreme Court noted:

> The procedure for a limitation action [pursuant to 46 U.S.C. § 30511] is now found in Supplemental Admiralty and Maritime Claims Rule F. Much like its predecessor provisions, Rule F sets forth the process for filing a complaint seeking exoneration from, or limitation of, liability. The district court secures the value of the vessel or owner's interest, marshals claims, and enjoins the prosecution of other actions with respect to the claims. In these proceedings, the court, sitting without a jury, adjudicates the claims. The court determines whether the vessel owner is liable and whether the owner may limit liability. The court then determines the validity of the claims, and if liability is limited, distributes the limited fund among the claimants.

*Lewis*, 531 U.S. at 448.

**B.     Merits Arguments**

Having concluded that IFA's assertion of the Limitation Act defense is not barred, the Court turns to Plaintiff's challenges to the merits of the defense.

**1.     Prohibition of Liability Releases**

Plaintiff argues that "Section 30508 bans seagoing craft, when in transit between ports and destinations in the United States, or between domestic and foreign ports, from including a contractual waiver or release provision in their contracts with regard to personal injury claims." (Dkt. No. 184 at 9).[12] However, 46 U.S.C. § 30508 does not support this contention.

Section 30508 is titled "Provisions requiring notice of claims or limiting time for bringing action" and provides in pertinent part:

> The owner, master, manager, or agent of a vessel transporting passengers or property between ports in the United States, or between a port in the United States and a port in a foreign country, may not limit by regulation, contract, or otherwise the period for—
>
> (1) giving notice of, or filing a claim for, personal injury or death to less than 6 months after the date of the injury or death; or
>
> (2) bringing a civil action for personal injury or death to less than one year after the date of the injury or death.

46 U.S.C. § 30508(b).

It is clear from its plain language that § 30508 governs an owner's ability to limit the *time frame* within which claims and civil actions stemming from personal injury or death may be

---

[12] It is unclear how such a contention, if true, would apply to IFA's claim for limitation of liability rather than the enforceability of the release on which the Court has already ruled. Nevertheless, the Court will address the argument because the Court previously held that Plaintiff's negligence claim is barred by an enforceable release that she signed before participating on the jet ski tour. (Dkt. No. 214 at 19).

brought. It does not, as Plaintiff contends, prevent owners from "including a contractual waiver or release provision in their contracts with regard to personal injury claims." (Dkt. No. 184 at 9).

Plaintiff also argues that *In re Pacific Adventures*, 5 F. Supp. 2d 874 (D. Haw. 1998), requires the conclusion that "the prohibition in Section 30508 applies here." (Dkt. No. 184 at 9). That case, however, dealt with the prohibition against liability releases provided by 46 U.S.C. App. § 183c, which is now found in 46 U.S.C. § 30509. *See Oran v. Fair Wind Sailing, Inc.*, No. 08-0034, 2009 U.S. Dist. LEXIS 110350, *40 (D.V.I. Nov. 23, 2009) (stating that § 30509 was formerly § 183c).

Section 30509 is titled "Provisions limiting liability for personal injury or death" and provides in relevant part:

> The owner, master, manager, or agent of a vessel transporting passengers between ports in the United States, or between a port in the United States and a port in a foreign country, may not include in a regulation or contract a provision limiting—
>
> (A) the liability of the owner, master, or agent for personal injury or death caused by the negligence or fault of the owner or the owner's employees or agents; or
>
> (B) the right of a claimant for personal injury or death to a trial by court of competent jurisdiction.

46 U.S.C. § 30509(a)(1).

While § 30509 prevents an owner from limiting its liability under certain circumstances, it does not apply here because the jet ski involved in this case was not a "vessel transporting passengers between ports in the United States, or between a port in the United States and a port in a foreign country" as required by § 30509(a)(1). Instead, Plaintiff was injured during a recreational jet ski and snorkeling tour provided by IFA. *See Oran*, 2009 U.S. Dist. LEXIS 110350 at *41 (concluding that § 30509 did not apply where the plaintiff was injured during a sailing class aboard the *Hound Dog* for recreational purposes and "not to obtain transport from

one location to another"); *Shultz v. Fl. Keys Dive Ctr., Inc.*, 224 F.3d 1269, 1271 (11th Cir. 2000) (concluding that § 183c did not invalidate a release of liability pertaining to injuries sustained while scuba diving, and noting that a dive boat was not a vessel transporting passengers between ports under § 183c where it departed from one port, brought divers to the location of the dive, and returned them to the original port).

Accordingly, neither § 30508 nor § 30509 prohibits IFA's use of a contractual waiver or release of liability. Nor is there any discernible connection between these statutory provisions and IFA's ability to invoke the Limitation Act. Plaintiff's argument in this regard is therefore rejected.

### 2. Privity or Knowledge

Plaintiff next contends that IFA is not entitled to the protections of the Limitation Act because it has failed to meet its burden of demonstrating that the collision in question occurred without privity or knowledge of the shipowner. (Dkt. No. 184 at 12-16). IFA contends that Mark DeAmelia, IFA's "sole stock holder and managing agent," was without privity or knowledge because "[h]e was neither present nor did he do any act that resulted in Plaintiff's injury." (Dkt. No. 195 at 9). Plaintiff, in turn, contends that knowledge and privity can be imputed to Mr. DeAmelia and IFA because IFA negligently trained and negligently entrusted the jet ski to its employee, Mr. Mahon, who subsequently collided with Plaintiff during the tour. (Dkt. No. 184 at 15). The Court is unable to resolve this dispute until the factual record is fully developed.

As discussed at length *supra*, Part II, the Limitation Act "allows a vessel owner to limit liability for damage or injury, occasioned without the owner's privity or knowledge, to the value of the vessel or the owner's interest in the vessel." *Lewis*, 531 U.S. at 446; *see also In re City of New York*, 522 F.3d at 283; *Gorman*, 2 F.3d at 522. The shipowner claiming the Limitation Act's

protection bears the burden of demonstrating that it "was without the privity or knowledge" of the act or condition that caused the injury. *Carr*, 191 F.3d at 4; *Bankers Trust Co.*, 761 F.2d at 948 n.14. In instances involving corporate-owned vessels, the inquiry focuses on the privity and knowledge of the corporation's shore-based management. *See Tittle*, 544 F.2d at 756.

Here, Plaintiff does not contend that Mr. DeAmelia had actual knowledge of the employee's conduct which preceded Plaintiff's injury. Instead, Plaintiff seeks to impute privity and knowledge to IFA for entrusting the jet ski to its employee, Mr. Mahon, claiming that he was not properly trained. (Dkt. No. 184 at 15). This theory is an appropriate means by which to establish knowledge and privity of IFA's management. *See e.g.*, *Joyce v. Joyce*, 975 F.2d 379, 385 (7th Cir. 1992) (concluding that an owner would not be protected by the Limitation Act if he knew, had reason to know, or could have discovered through reasonable inquiry, that a vessel should not have been entrusted to a particular captain because it was likely to be used in an unsafe manner); *In re Guglielmo*, 897 F.2d 58, 61-63 (2d Cir. 1990) (reversing a grant of summary judgment in favor of the shipowner in a limitation action because there was evidence that the owner knew that his son, who was operating the vessel without the owner at the time of the collision, was not a competent operator); *Otal*, 673 F.3d at 115 (noting that a captain's negligence is not "within the owner's knowledge or privity if the vessel's owner has selected a *competent* captain") (emphasis added); *In re City of New York*, 522 F.3d at 287-88 (finding that a ferry captain's negligence was within the privity or knowledge of the City of New York where the City's director admitted that a "two-pilot rule" requiring a captain and assistant captain to be in the pilothouse during operations was not properly disseminated or enforced, and the director was aware that the rule was not observed on all ships in good weather); *Red Star Towing & Transp. Co. v. The "Ming Giant"*, 552 F. Supp. 367, 371-72 (S.D.N.Y. 1982) (finding that the

shipowner "was responsible for and in privity with" the negligence of the crew for failing to attempt meaningful rescue operations "by reason of failure of the owner to provide proper training").

Whether IFA will prevail on its Limitation Act defense, therefore, depends on an examination of the propriety of Mr. Mahon's training and IFA's knowledge of his competency to operate the jet ski. These issues cannot be resolved prior to the full development of the factual record in this case, and cannot, as IFA suggests in its Motion, be adjudicated as a matter of law at this juncture. Accordingly, the Court will defer ruling on the merits of the Limitation Act defense until after trial. Further, the Court will reach the issue only if the jury first returns a verdict in excess of the asserted value of the jet ski involved in the accident. *See Cody v. Phil's Towing Co.*, 247 F. Supp. 2d 688, 691 n.2 (W.D. Pa. 2002) (noting that it has long been recognized that courts have the authority to postpone the resolution of the limitation of liability issue until after plaintiff prevails on his claims in an amount exceeding the value of the vessel) (citations omitted).

### 3.  Exemption from Limitation

Plaintiff also asserts that 46 U.S.C. § 30102 applies and exempts her personal injury claims from potential limitation under § 30505. Specifically, Plaintiff claims that § 30102 applies because "there has been a neglect or failure to comply with regulations regarding inspection, operation or 'manning of vessels'[,] or there is a known defect with regard to the vessel[']s seaworthiness." (Dkt. No. 184 at 9). Plaintiff provides no explanation for, or elaboration of, this assertion.

> Section 30102(a) provides:
>
> Liability. The owner and master of a vessel, and the vessel, are liable for personal injury to a passenger or damage to a passenger's baggage caused by—
>
> (1) a neglect or failure to comply with part B or F of subtitle II of this title [46 U.S.C. § 3101 *et seq.* or § 8101 *et seq.*]; or
>
> (1) a known defect in the steaming apparatus or hull of the vessel.

46 U.S.C. § 30102(a). Part B and F of subtitle II govern the inspection, regulation, and manning of vessels. Section 30102(b) states that "[a] liability imposed under this section is not subject to limitation under chapter 305 of this title [46 U.S.C. §§ 30501-30512]." 46 U.S.C. § 30102(b).

In the instant case, Plaintiff has offered nothing apart from her own assertion that § 30102 exempts her personal injury claims from the potential liability limitation available under § 30505. Plaintiff has not specifically identified: (1) how IFA "neglect[ed] or fail[ed] to comply with part B or F of subtitle II"; or (2) that "a known defect in the steaming apparatus or hull of the vessel" existed. 46 U.S.C. § 30102(a). Accordingly, the Court cannot conclude at this time that § 30102 exempts Plaintiff's personal injury claims from potential limitation under § 30505.

The Court, however, will reserve until after trial its ultimate determination of whether § 30102 applies and exempts her personal injury claims from potential limitation under § 30505. Plaintiff will have the opportunity to present evidence at trial to establish the existence of a known defect in the steaming apparatus or hull of the vessel or that IFA neglected or failed to comply with part B or F of subtitle II. Only after this factual record is established can the Court determine whether § 30102 applies.

### C.     Further Proceedings

Having concluded that further development of the factual record is necessary to resolve the limitation issue, the Court must address further proceedings in this matter. In essence, this

case presents three issues: (1) whether IFA is liable under a theory of gross negligence; (2) if so, the extent of Plaintiff's damages; and (3) if the damages exceed the value of the jet ski, whether limitation of liability is appropriate under the Limitation Act. Because the issues here overlap with regard to the evidence necessary for their resolution, judicial economy suggests that the parties present evidence on all three issues in a single proceeding, consisting of two phases, if necessary.[13] *See In re Great Lakes Dredge & Dock Co.*, 895 F. Supp. 604, 615 (S.D.N.Y. 1995) (concluding that "judicial economy concerns suggest that we hold the court proceedings on the limitation issues and the jury trial on the claims simultaneously"); *Red Star Towing*, 552 F. Supp. at 372 n.2 (consolidating limitation hearing with trial). Thus, the Court will require the parties to present their evidence on all three issues at the trial scheduled to commence on July 22, 2013.

The Court must also determine who will be the finder of fact for each of the three issues. Here, Plaintiff brought this action pursuant to the Court's diversity jurisdiction demanding a trial by jury, but limitation actions are generally resolved by the courts. To cure this conflict, courts have often employed two factfinders in a single trial—submitting the liability and damage issues to the jury, and reserving for themselves the limitation issues. *See* 3-II *Benedict on Admiralty* § 16 ("[T]here is authority for an admiralty court submitting the issues in a limitation case to jury. Courts have more often submitted the liability and damage issues to the jury, reserving for the court the limitation issues."); *see also In re Great Lakes Dredge*, 895 F. Supp. at 615 (concluding that at the close of the simultaneous trial on both the claims and the limitation

---

[13] In the first phase, the parties will present their evidence regarding the gross negligence claim and Plaintiff's alleged damages. Should the jury find in favor of Plaintiff in an amount exceeding the asserted value of the jet ski involved in the accident, the Court—in the second phase—will consider any further evidence necessary to conclusively establish the value of the jet ski and IFA's privity or knowledge—or lack thereof—of Mr. Mahon's alleged wrongdoing.

issues, "the court will decide whether limitation is appropriate for either plaintiff and the jury will render a verdict on the remaining issues"); 29-704 *Moore's Federal Practice – Civil* § 704.08 ("At least one federal court has ordered the concurrent trial of limitation and wrongful death claims, with the bench to resolve the limitation issues and a jury to resolve claims, including the issue of damages."). The Court will employ such a procedure in this case.

## IV. CONCLUSION

For the reasons stated above, IFA's Limitation Act defense is neither untimely nor otherwise barred. The Court, however, cannot address the merits of the limitation defense before a fuller development of the factual record on the issues that bear on the availability of the defense. Accordingly, the Court will deny IFA's instant "Motion for Partial Summary Judgment" (Dkt. No. 175) seeking, at this juncture, to limit its liability. At trial, a jury will determine whether IFA was grossly negligent, and if so, the extent of damages for which it is liable. If the jury finds IFA liable for an amount greater than the value of the jet ski involved, the Court will then determine whether IFA is entitled to limitation of liability based on the evidence already presented at trial and any additional evidence that may need to be presented on the limitation issue. An appropriate Order accompanies this Memorandum Opinion.

Date: April 12, 2013  _____/s/_____
 WILMA A. LEWIS
 District Judge