## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| **DENISE M. JEROME,** ) | |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | |
| ) | **Civil Action No. 2009-092** |
| **WATER SPORTS ADVENTURE  RENTALS** ) | |
| **AND EQUIPMENT, INC., d/b/a/ ISLAND** ) | |
| **FLIGHT ADVENTURES,** ) | |
| ) | |
| **Defendant.** ) | |
| —————————————————————— ) | |

**Attorneys:**
**A. Jeffrey Weiss, Esq.,**
St. Thomas, U.S.V.I.
*For the Plaintiff*

**Robert L. King, Esq.,**
St. Thomas, U.S.V.I.
*For the Defendant*

## <u>MEMORANDUM OPINION</u>

**Lewis, District Judge**

THIS MATTER is before the Court on the "Motion In Limine to Exclude the Opinion of Dr. Richard Moore" (Dkt. No. 200) and "Motion to Exclude the 'Expert' Testimony of Alan Hugenot" (Dkt. No. 202) filed by Defendant Watersports Adventure Rentals and Equipment, Inc., doing business as Island Flight Adventures ("IFA"). Plaintiff opposes the Motions. For the reasons that follow, the Court will deny the Motion as to Dr. Moore without prejudice, and grant in part and deny in part the Motion as to Captain Hugenot.

### I.    BACKGROUND

Plaintiff Denise Jerome initiated this action to recover damages for personal injuries allegedly sustained during a jet ski and snorkeling tour provided by IFA in the waters off of St. Croix, United States Virgin Islands on March 12, 2009.

On February 10, 2013, IFA filed the instant "Motion In Limine to Exclude the Opinion of Dr. Richard Moore" and a supporting memorandum seeking to exclude portions of Dr. Moore's proposed testimony as unreliable pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). (Dkt. Nos. 200, 201). Similarly, on February 13, 2013, IFA filed its "Motion to Exclude the 'Expert' Testimony of Alan Hugenot" and a supporting memorandum requesting—on Rule 702 and *Daubert* grounds—that the Court prohibit Captain Hugenot from testifying at any proceeding in the case. (Dkt. Nos. 202, 203). After requesting and receiving four extensions of time within which to respond to the Motions (*see* Dkt. Nos. 210, 217, 219, 221), Plaintiff filed her Opposition on March 14, 2013 (Dkt. No. 222). As the time for filing replies has passed, the matter is now ripe for consideration.

## II.   LEGAL PRINCIPLES

District courts have a "gatekeeping" function in connection with expert testimony. *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 290 (3d Cir. 2012); *Barnes v. Century Aluminum Co.*, No. 05-62, 2013 U.S. Dist. LEXIS 42311, *13 (D.V.I. Mar. 26, 2013) (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142, (1997), and *Daubert*, 509 U.S. at 589); *Muhsin v. Pac. Cycle, Inc.*, No. 2010-060, 2012 U.S. Dist. LEXIS 80441, *9 (D.V.I. June 8, 2012) (citations omitted). Federal Rule of Evidence 702, as amended in 2000 to incorporate the standards set forth by the Supreme Court in *Daubert*, requires district courts to ensure that expert testimony is not only relevant, but reliable. *ZF Meritor*, 696 F.3d at 291 (citations omitted).

Rule 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of

2

reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

As the Third Circuit has explained, Rule 702 "embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003); *see also Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008) ("Rule 702 has three major requirements: (1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact."). "Qualification refers to the requirement that the witness possess specialized expertise." *Schneider*, 320 F.3d at 404. To establish reliability, the testimony "must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation; the expert must have good grounds for his o[r] her belief." *Id*. (citations and internal quotation marks omitted); *see also Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 321 (3d Cir. 2003) (noting that district courts must ensure that "the expert's opinion [is] based on the methods and procedures of science rather than on subjective belief or unsupported speculation") (citations and internal quotation marks omitted). To satisfy the fit requirement, "the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact." *Schneider*, 320 F.3d at 404.

The party proffering expert testimony bears the burden of demonstrating that the testimony satisfies the requirements of Rule 702. *Virgin Islands v. Jacobs*, No. 2001-65, 2001 U.S. Dist. LEXIS 22511, *12-13 (D.V.I. Dec. 28, 2001) (citations omitted); *Mercedes-Benz USA, Inc. v. Coast Auto. Group, Ltd.*, 362 F. App'x 332, 335 (3d Cir. 2010) (citations omitted).

## III.   DISCUSSION

Pursuant to Rule 702, IFA challenges the admissibility of the proposed testimony of two experts Plaintiff has retained in this case: (1) Dr. Moore, an economist; and (2) Captain Hugenot, a marine consultant.[1] The Court will address these challenges in turn.

### A.   Dr. Moore

In its Motion and supporting memorandum, IFA challenges portions of Dr. Moore's expert report on multiple grounds. In particular, IFA contests the reliability of methods used to calculate Plaintiff's future earning capacity and disputes a number of the specific calculations contained in the November 8, 2011 Report (Dkt. No. 201-2) submitted by Dr. Moore. (Dkt. No. 201 at 3-13).

In her Opposition, Plaintiff disagrees with the arguments advanced by IFA and claims that they ignore Dr. Moore's amended reports and his deposition testimony. (Dkt. No. 222 at 22-32). Plaintiff attaches amended reports dated October 1, 2012 (Dkt. No. 222-5) and March 12, 2013 (Dkt. No. 222-6) in support of her Opposition, but indicates that Dr. Moore's deposition transcript is not available because it has never been finalized. (Dkt. No. 222 at 22).[2] The three expert reports are markedly different, and Plaintiff contends that the amended reports correct the

---

[1] Plaintiff's marine consultant describes himself as a "Naval Architect – Marine Surveyor and Licensed Master (Captain) of Inspected Small Passenger Vessels, charter skipper and certified small craft and aquatics instructor[.]" (Dkt. No. 203-2 at 1). The Court will refer to him as Captain Hugenot.

[2] The Court cannot conceive of how IFA's Motion and supporting memorandum—filed on February 10, 2013—could be said to have ignored an amended report dated March 12, 2013.

"inadvertent" and "mathematical" errors which were contained in the initial report and subsequently identified in IFA's supporting memorandum. (*Id.*).[3]

As the Third Circuit has explained, district courts have discretion in setting the scope of the record necessary to exercise their gatekeeping function under Rule 702. *See Oddi v. Ford Motor Co.*, 234 F.3d 136, 154 (3d Cir. 2000) (concluding that the district court did not abuse its discretion in declining to hold a hearing before ruling on the admissibility of expert testimony where the court had before it the depositions and affidavits of the plaintiff's experts); *United States v. Dien Vy Phung*, 127 F. App'x 594, 597 (3d Cir. 2005) ("District courts have considerable latitude in deciding how to perform their *Daubert* gatekeeping function.") (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

Here, the Court concludes that the current record is insufficient to properly evaluate the admissibility of Dr. Moore's proposed testimony because the parties' filings address different expert reports. Accordingly, the Court will deny IFA's Motion (Dkt. No. 200) without prejudice. Should IFA still seek to challenge Dr. Moore's testimony in light of the recently filed amended reports, IFA may file an appropriate motion on or before April 25, 2013. Plaintiff may file a response to such motion on or before May 6, 2013.

**B.   Captain Hugenot**

In its Motion and supporting memorandum, IFA takes issue with Captain Hugenot's opinions and seeks an order prohibiting him from testifying in this matter. IFA argues that through his reports (Dkt. Nos. 203-2, 222-4), Captain Hugenot improperly vouches for the

---

[3] Most notably, the November 8, 2011 report estimates that Plaintiff's damages total $3,733,003 (Dkt. No. 201-2 at 12), while the October 1, 2012 amended report reduces the figure to $1,841,387 (Dkt. No. 222-5 at 11), and the March 12, 2013 amended report reduces the total further to $1,802,705 (Dkt. No. 222-6 at 15).

credibility of fact witnesses, describes various legal principles, and arrives at legal conclusions. (Dkt. No. 203 at 3-7). In short, IFA contends that Captain Hugenot's proposed testimony invades the province of both judge and jury in this matter. Plaintiff disputes these contentions, claiming that Captain Hugenot's reports are proper based on his maritime expertise. (Dkt. No. 222 at 13-21).

In large part—although not entirely—the Court disagrees with Plaintiff's position regarding the propriety of Captain Hugenot's proposed testimony. Even assuming that Captain Hugenot is sufficiently qualified to opine on maritime matters, the Court will limit his testimony in this case because his reports and deposition excerpts (Dkt. Nos. 203-1, 222-3) show that many of his opinions are unhelpful to the trier of fact and otherwise improper. *See Schneider*, 320 F.3d at 404 (requiring that an expert be qualified and that his opinions be both based on reliable methods and helpful to the trier of fact).

To a large degree, Captain Hugenot's reports reflect a basic misunderstanding of the role of expert testimony in civil litigation. In fact, the reports are comprised of example after example of what an expert *cannot* do.[4] As the Second Circuit succinctly explained:

> [E]xpert testimony that usurp[s] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it by definition does not aid the jury in making a decision; rather, it undertakes to tell the jury what result to reach, and thus attempts to substitute the expert's judgment for the jury's.

*Nimely v. City of N.Y.*, 414 F.3d 381, 397 (2d Cir. 2005) (internal citations and quotation marks omitted). As discussed below, Captain Hugenot impermissibly attempts to do just that.

---

[4] The Court will address the major *categories* of concern, instead of identifying every improper statement in Captain Hugenot's reports. The examples discussed in this Memorandum Opinion are thus illustrative of the reports' larger problems.

Captain Hugenot's reports improperly attempt to make assessments of witness credibility. However, it is well-settled that "determining the weight and credibility of [a witness'] testimony . . . . belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men . . . ." *Aetna Life Ins. Co. v. Ward*, 140 U.S. 76, 88 (1891); *see also Sheridan v. E.I. Dupont de Nemours & Co.*, 100 F.3d 1061, 1072 (3d Cir. 1996) (stating that the "[e]valuation of witness credibility is the exclusive function of the jury") (citation omitted). Accordingly, "[c]redibility is not a proper subject for expert testimony [because] the jury does not need an expert to tell it whom to believe, and the expert's 'stamp of approval' on a particular witness' testimony may unduly influence the jury." *United States v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991) (citations omitted); *see also Westcott v. Crinklaw*, 68 F.3d 1073, 1076 (8th Cir. 1995) ("[A]n expert may not go so far as to usurp the exclusive function of the jury to weigh the evidence and determine credibility.") (citations omitted); *Nimely*, 414 F.3d at 398 (noting that Courts of Appeals have "consistently held that expert opinions that constitute evaluations of witness credibility, even when such evaluations are rooted in scientific or technical expertise, are inadmissible under Rule 702") (citations omitted).

Here, Captain Hugenot's reports are replete with bare assessments of witness credibility. Captain Hugenot repeatedly states that testimony of Plaintiff's various witnesses "corroborates testimony of [P]laintiff" and "supports Plaintiff's description of events." (*See e.g.*, Dkt. Nos. 203-2 at 4, 222-4 at 4-5). Similarly, Captain Hugenot (who is not a medical doctor) opines that "Plaintiff's injury's [sic]" are "consistent with the testimony provided by Plaintiff, Her [sic] boyfriend Kevin and the Third [sic] party witness" and "inconsistent" with IFA's account of the events. (Dkt. No. 222-4 at 4). An expert, however, "may not simply recapitulate the trial

evidence and express an opinion based on that evidence and on his judgment of witness credibility[.]" *Benson*, 941 F.2d at 606.

Captain Hugenot's reports do not stop at assessing credibility; instead, he proceeds to resolve these credibility issues and set forth "**WHAT APPEARS TO BE THE ACTUALLY [sic] SERIES OF EVENTS**[.]" (Dkt. No. 203-2 at 5) (emphasis in original). The Court will not permit this "attempt[] to substitute the expert's judgment for the jury's" because it does not "assist the trier of fact" under Rule 702. *Nimely*, 414 F.3d at 397 (quoting *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994), and Fed. R. Evid. 702). Such credibility determinations and purported resolutions of factual disputes are not appropriate expert testimony because they amount to nothing more than an expert "drawing inferences from the evidence that he was no more qualified than the jury to draw." *Benson*, 941 F.2d at 604.

Captain Hugenot's reports also improperly state (and misstate) legal principles and arrive at legal conclusions. Experts are not permitted to "usurp[] . . . the role of the trial judge in instructing the jury as to the applicable law[.]" *Nimely*, 414 F.3d at 397 (citation omitted); *Whitmill v. City of Phila.*, 29 F. Supp. 2d 241, 247 (E.D. Pa. 1998) ("The use of expert testimony must be carefully circumscribed to assure that the expert does not usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it.") (citation omitted).

Among other legal conclusions, Captain Hugenot interprets the language of a release of liability executed by Plaintiff and concludes that her injuries are not covered by the release. (Dkt. No. 203-2 at 6).[5] Not only is it the Court's duty to resolve this legal question, but the Court

---

[5] In reaching this conclusion, Captain Hugenot analogizes the jet ski accident to the "similar [] legal situation which applies if defendant's employee had instead hit Plaintiff with defendant's

already fulfilled this duty by issuing a Memorandum Opinion on February 26, 2013 detailing why the release *does* apply to Plaintiff's claim. (Dkt. No. 214 at 8-17). Captain Hugenot also improperly (and incorrectly) defines "the rule of preponderance of evidence" (Dkt. No. 203-2 at 5),[6] and cites "old and long settled American Admiralty law" for legal propositions that are not applicable in this case. (Dkt. Nos. 203-2 at 5, 222-4 at 5).[7] Irrespective of the inaccuracy or inapplicability of Captain Hugenot's conclusions and statements of legal principles, the fact remains that they are not within the scope of proper expert testimony. *Nimely*, 414 F.3d at 397; *Whitmill*, 29 F. Supp. 2d at 247.[8]

---

company his [sic] car while she was walking through Defendant's parking lot after using the [jet ski]." (Dkt. No. 203-2 at 6).

[6] According to Captain Hugenot, "[i]n establishing precisely what happened when there is a conflict in testimony, it is best to follow the rule of the preponderance of evidence. Here the testimony of (4) witnesses, Plaintiff, her boyfriend Kevin Jones, and two additional third party witnesses Nicole and Glenn Dempsey, all corroborate each other as to the sequence of events[.]" (Dkt. No. 203-2 at 5). It is, of course, elementary that courts—not experts—define the governing legal terms and principles. *See Nimely*, 414 F.3d at 397; *Whitmill*, 29 F. Supp. 2d at 247.

[7] Captain Hugenot's reports state that "[i]t is old and long settled American Admiralty law that when one vessel is properly moored and a collision results with another vessel that the moving vessel is *prima facie* at fault." (Dkt. Nos. 203-2 at 5, 222-4 at 5).  He then provides the following quotation and citation: "'***A moving vessel is prima facie at fault for a collision with one that is moored***[.]' The Banner (Ala 1915) 225 F 433." (Dkt. Nos. 203-2 at 5, 222-4 at 5) (emphasis in original). Apart from the apparent inapplicability of such a legal principle to this case where a moving vessel allegedly struck a swimmer, Captain Hugenot again inappropriately invades the province of the Court. *See Nimely*, 414 F.3d at 397; *Whitmill*, 29 F. Supp. 2d at 247.

[8] IFA also argues that, even if experts were permitted to testify as to legal principles, Captain Hugenot is not qualified to render such testimony. (Dkt. No. 203 at 6). Because this testimony is not within the appropriate domain of expert opinions, the Court need not address Captain Hugenot's qualifications. However, the Court notes that the only information which was provided regarding Captain Hugenot's legal expertise is a line on the education section of his curriculum vitae stating: "First Year Law School (LLB) Contracts, Torts, Criminal Law, Southern California University – Completed 1 year[.]" (Dkt. No. 203-3 at 2).

By applying his account of the disputed facts to the law as he sees it, Captain Hugenot also impermissibly makes findings on the ultimate issues in this case. An expert may not "instruct the jury as to an ultimate determination that [is] exclusively within its province[.]" *Nimely*, 414 F.3d at 398; *see also Quagliarello v. Dewees*, 802 F. Supp. 2d 620, 624 (E.D. Pa. 2011) (stating that expert opinions that "merely tell the jury what result to reach" are not admissible) (citations omitted); *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, No. 3:CV-01-0485, 2003 U.S. Dist. LEXIS 27621, *10 (M.D. Pa. July 8, 2003) ("'Expert' testimony regarding legal issues, legal standards, and ultimate legal conclusions is inadmissible because it usurps the roles of the court and jury.") (citations omitted).

Here, Captain Hugenot's reports are riddled with the ultimate conclusions that should instead be left for the jury to decide. For example, Captain Hugenot concludes, *inter alia*, that: (1) "**DEFENDANT'S ACTION IS THE PROXIMATE CAUSE OF PLAINTIFF'S INJURIES**"; (2) the "**ACTIONS OF PLAINTIFF WERE NOT CONTRIBUTORY**"; and (3) "**DEFENDANT FAILED TO EXERCISE ORDINARY CARE**[.]" (Dkt. Nos. 222-4 at 5-6, 203-2 at 5-7) (emphasis in original). In fact, it is apparent from the first page of each report that Captain Hugenot believes it is within the scope of his engagement as an expert to resolve these very questions. (*See* Dkt. Nos. 203-2 at 1, 222-4 at 1). However, the Court will not permit Captain Hugenot to answer questions which ultimately must be answered by the jury.

In light of these various concerns with Captain Hugenot's reports, the Court finds that Plaintiff has failed to carry her burden of establishing the requirements of Rule 702 with respect to the above-referenced and similar portions of Captain Hugenot's proposed expert testimony.

It is not the case, however, that all of Captain Hugenot's proposed testimony is inadmissible. Expert testimony may be used to establish the applicable standard of care in a

particular industry or profession where the standard of care is "beyond the common knowledge" of the lay jury. *See Wilburn v. Maritrans GP*, 139 F.3d 350, 361 (3d Cir. 1998) (concluding that the question of whether a tug captain violated the standard of care "was beyond the common knowledge possessed by members of the jury" because evaluating the captain's decision-making "require[d] a knowledge of the navigation and operation of an ocean going tug and barge in bad weather"); *Henry v. St. Croix Alumina, LLC*, No. 1999-0036, 2009 U.S. Dist. LEXIS 80830, *22-24 (D.V.I. Aug. 28, 2009) (finding that a plaintiff in a negligence action was required to present expert testimony "to establish the particular standard of care applicable to storage of bauxite and red mud[,]" hazardous materials stored at the St. Croix Alumina Refinery Plant).

Here, Captain Hugenot's reports identify various rules and regulations—promulgated by the United States Coast Guard, the Government of the Virgin Islands, and other organizations—regarding the appropriate operation of personal watercraft. (*See e.g.*, Dkt. No. 203-2 at 7-12). Additionally, after assuming that certain witnesses statements about Mr. Mahon's operation of the jet ski are accurate and truthful, the report details Mr. Mahon's various violations of these alleged industry standards. (*See id.*). The Court will not exclude such testimony under *Daubert* and Rule 702. Instead, IFA will have ample opportunity at trial to challenge, as appropriate, Captain Hugenot's qualifications to testify, his opinion regarding the appropriate standard of care in operating a personal watercraft, and the various assumptions underlying his conclusion that Mr. Mahon did not meet that standard.

Accordingly, the Court will limit Captain Hugenot's testimony in this matter as discussed above.

## IV.   CONCLUSION

For the reasons stated above, Plaintiff has failed to establish that multiple portions of Captain Hugenot's proposed testimony satisfy the rigors of Rule 702. Accordingly, the Court will grant IFA's "Motion to Exclude the 'Expert' Testimony of Alan Hugenot" (Dkt. No. 202) in part and limit Captain Hugenot's proposed testimony to defining the appropriate standard of care in operating a personal watercraft and opining on whether Mr. Mahon's conduct fell below that standard.

The Court, however, currently lacks the information necessary to assess the proposed testimony of Dr. Moore. Thus, the Court will deny IFA's "Motion In Limine to Exclude the Opinion of Dr. Richard Moore" (Dkt. No. 200) without prejudice. An appropriate Order accompanies this Memorandum Opinion.

Date: April 15, 2013                                  _____/s/_____
                                                      WILMA A. LEWIS
                                                      District Judge